T.C. Memo. 1998-304


UNITED STATES TAX COURT


JACK F. AND VIRGINIA SURRIDGE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JACK F. SURRIDGE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10495-97, 10496-97.     Filed August 20, 1998.


Virginia Surridge, pro se.

Julie L. Payne, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, Judge:  Jack F. and Virginia Surridge (petitioners)[1] petitioned the Court to redetermine respondent's determination of the following deficiencies and additions to tax:

---

[1] The Surridges were copetitioners in docket No. 10495-97. Mr. Surridge was the sole petitioner in docket No. 10496-97. For clarity, we refer to the Surridges as petitioners for all years.

|       |            | Additions to Tax | |
|-------|------------|-----------------|----------|
| Year  | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1990  | $9,672     | $2,418          | --       |
| 1991  | 4,615      | 1,154           | $263     |
| 1992  | 11,216     | 2,804           | 492      |
| 1993  | 1,354      | 339             | 55       |
| 1994  | 2,486      | 622             | 80       |

Respondent reflected the determinations for 1990 in a notice of deficiency issued to petitioners on February 20, 1997. Respondent reflected the other determinations in a notice of deficiency issued to Mr. Surridge on the same date.

We must decide:

1.  Whether petitioners' Arabian horse racing, breeding, and sales activity was an activity "not engaged in for profit" within the meaning of section 183.  We hold it was.

2.  Whether petitioners are liable for the additions to tax determined by respondent under section 6651(a)(1).  We hold they are.

3.  Whether petitioners are liable for the additions to tax determined by respondent under section 6654.  We hold they are.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference.  Petitioners are husband

and wife, and they filed joint Federal income tax returns for all years in issue.  They resided in Maple Valley, Washington, when they petitioned the Court.  Ms. Surridge is a full-time insurance agent who works as a sole proprietor.  Mr. Surridge is a retired, career serviceman who is involved full-time on the family farm.

Ms. Surridge purchased her first horse in 1959 or 1960.  She began raising Arabian horses approximately 10 years later with the intent to show them.  She abandoned this intent by the early 1970's, opting to breed and raise Arabian horses with an intent to race them.  She raced two Arabian horses in or about 1974, and she did not race any more horses until approximately 1984.  Mr. Surridge began participating in Ms. Surridge's horse-related activities in 1976.  Neither he nor she is a State certified or licensed horse trainer.

From 1990 through 1994, petitioners maintained a stable of approximately 25 horses, four of which were capable of racing. The remaining horses were broodmares, stallions, geldings, and horses too young or physically unable to race.  During the subject years, the number of races in which the four horses participated, and the amount of prize money that each horse won, are as follows:

| Horse | Number of Races | Prize Money Awarded |
|---|---|---|
| Bey El Shaw | 4 | $100 |
| Sir Latigo | 6 | 500 |
| Parkwood Barbaado | 15 | 2,237 |
| Mystic Moods | 6 | uncertain |

In 1991, petitioners bred two of their broodmares, "Kamla" and "Meczewza", with stallions owned by other breeders.

Petitioners are members of various Arabian horse associations, registries, and clubs. They subscribe to various magazines and newsletters, and they attend various classes and seminars pertaining to horse raising and care.

Petitioners have never used in vitro fertilization techniques as part of their horse breeding activities, and they have never commissioned a study of Arabian horses' bloodlines to determine those horses that are most likely to sire foals of racing potential. They do not maintain a bank account for their activity separate from their personal accounts, and they do not maintain journals, ledgers, or organized records of income and expenses for their activity. They have never prepared income statements, balance sheets, income projections, or any other financial guidelines for their activity. They have never reported a profit from their activity, or from any other horse-related activity, on any Federal income tax return.

During the years in issue, petitioners collected insurance proceeds totaling $15,000 for injuries or death suffered by their horses, and they had life insurance policies on many of their horses. In 1993, they sold one horse for $1,500.

With respect to the subject years, petitioners reported on their joint tax returns the following amounts of pension income, self-employment income, capital gain income, farm income (loss),

total income (loss), taxable income (loss), and Federal tax liability:

|  | 1990 | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|
| Pension income | $20,511 | $22,314 | $22,504 | $23,584 | $25,114 |
| Self-employment income | 24,937 | 22,450 | 21,092 | 13,317 | 6,819 |
| Capital gain income | none | none | none | 38,500 | none |
| Farm income (loss) | (46,475) | (60,224) | (32,203) | (39,302) | (50,786) |
| Total income (loss) | (919) | (13,628) | 11,394 | 41,808 | (18,489) |
| Taxable income (loss) | (11,769) | (23,088) | (605) | 29,508 | (32,739) |
| Federal tax liability | none | none | none | 4,429 | none |

## OPINION

### I. Profit Motive

This is another case of taxpayers claiming that they may deduct losses from a horse activity because they allegedly entered into the activity for profit. Section 183(a) generally limits the amount of expenses that may be deducted with respect to an activity "not engaged in for profit". Whether an individual conducts an activity for profit rests on whether he or she engages in the activity with the primary purpose of reaping a profit. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; see also Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published opinion 111 F.3d 139 (9th Cir. 1997). Whether petitioners engaged in their horse activity with the requisite profit objective must be determined from the facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a) and (b), Income Tax Regs. Petitioners bear the burden of proof, Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933), and more weight is given to

objective facts than to their subjective statements, <u>Holbrook v. Commissioner</u>, T.C. Memo. 1993-383; sec. 1.183-2(a), Income Tax Regs.

The following factors, which are nonexclusive, aid in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor is dispositive, <u>Golanty v. Commissioner</u>, <u>supra</u> at 426; sec. 1.183-2(b), Income Tax Regs., and a profit objective does not hinge on the number of factors satisfied, sec. 1.183-2(b), Income Tax Regs. We proceed to analyze these factors.

<u>1. Manner in Which Petitioners Carried On Their Activity</u>

One indicator of an activity engaged in for profit is a taxpayer's businesslike conduct of the activity. Sec. 1.183-2(b)(1), Income Tax Regs. This includes the keeping of complete and accurate books and records. <u>Id.</u>

Petitioners did not conduct their activity in a businesslike manner. They did not keep journals, ledgers, or organized records of income and expense. They did not prepare income statements, income projections, or other financial guidelines. They did not retain organized files of invoices, receipts, canceled checks, or bank statements. They did not maintain a separate bank account or prepare a budget.[2] They did not gauge the activity's profitability. They made little effort to advertise their horses to stud or to sell their horses outright.

Another indication of an activity engaged in for profit is a change of operating methods, adoption of new techniques or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability. Sec. 1.183-2(b)(1), Income Tax Regs. In this regard, we do not believe that petitioners were concerned with making their activity profitable. For a period of almost two decades, during which the activity generated a loss in every year, petitioners never attempted to change their method of operation or take any other action that would reduce the losses. Although petitioners did buy a new farm in 1993, they have never utilized this farm in their activity.

This factor favors respondent.

## 2. Expertise of Petitioners

Preparation for an activity by extensive study or by consultation with experts may indicate that a taxpayer has a

---

[2] In contrast, Ms. Surridge kept extensive records and a separate bank account for her insurance business.

profit motive where the taxpayer follows such advice.  Sec. 1.183-2(b)(2), Income Tax Regs.  In preparing for an activity, a taxpayer need not make a formal market study, but ordinarily should undertake a basic investigation of the factors that will affect the activity's profitability.  Underwood v. Commissioner, T.C. Memo. 1989-625; Holbrook v. Commissioner, supra.

We do not believe that either petitioner knows the business or economic aspects of a horse racing, breeding, and sales activity, including, specifically, the way in which such an activity must be operated in order to return a profit. Petitioners never studied their activity's market, and they never conducted a basic investigation of the factors that would affect the activity's profitability.  Nor can we find that petitioners knew the activity's accepted business and economic practices. Although petitioners did employ three certified horse trainers in their activity, and consulted a veterinarian, the trainers worked for petitioners for no longer than 8 months, and the veterinarian never advised petitioners on horse breeding or training.  We are unpersuaded that these individuals were utilized to assist petitioners in running a profitable business.  The same is true with respect to an accountant whom petitioners retained to represent them during an IRS audit in 1991.  The record contains no evidence that the accountant was retained to assist petitioners with a business plan for the activity or to establish any other methodology for producing a profit.

This factor favors respondent.

## 3.  Time and Effort Expended by Petitioners

We consider the time and effort spent by petitioners in their horse activity.  Sec. 1.183-2(b)(3), Income Tax Regs. The fact that a taxpayer devotes much time to an activity may indicate a profit intent.

Ms. Surridge spent little time in petitioner's activity; she works long hours in her insurance business.  Although Mr. Surridge is involved full-time in the activity, we believe, as discussed below, that his principal motive for his dedication to this activity is pleasure or recreation, rather than profit.

This factor does not favor either party; it is neutral.

## 4.  Petitioners' Expectation of Asset Appreciation

Another factor to consider is a taxpayer's expectation that assets used in the activity may appreciate in value.  Sec. 1.183-2(b)(4), Income Tax Regs.  The term "profit" includes the appreciation in the value of assets used in an activity.  Id.

Although petitioners allege that they raised some of their horses for sale, presumably at a profit, the record shows that petitioners sold only one horse during the subject years.  We are unable to find that petitioners ever tried to keep track of the value of their farm or their horses.  In fact, Ms. Surridge testified that she did not know the market value of her horses.

This factor favors respondent.

## 5. Petitioners' Success in Similar or Dissimilar Activities

We consider petitioners' success in similar or dissimilar activities. Sec. 1.183-2(b)(5), Income Tax Regs. Although an activity is unprofitable, we take into account whether the taxpayer previously converted similar activities from unprofitable to profitable enterprises. Id.

Ms. Surridge was a successful insurance agent operating her own business. Whereas an individual's success in a dissimilar activity would ordinarily tilt this factor toward him or her, such is not the case here because Ms. Surridge spent little time in petitioner's horse activity.

This factor does not favor either party; it is neutral.

## 6. Activity's History of Income and Losses

We consider petitioners' history of income and/or losses with respect to their horse activity. Sec. 1.183-2(b)(6), Income Tax Regs. Losses continuing beyond the period customarily required to make an activity profitable, if not explainable, may indicate that the activity is not engaged in for profit. Although a series of losses at the beginning of an activity does not necessarily mean that the activity was not entered into for profit, a continuing string of losses may weigh against a profit intent absent unforeseen or fortuitous circumstances beyond the taxpayer's control (e.g., fire, disease, theft). Id.

Ms. Surridge began breeding and racing horses during the early 1970's. Petitioners' activity never reported a profit. Exclusive of the $1,500 insurance payment, petitioners received less than $3,000 in race winnings during the subject years, while claiming total losses of $228,988. Petitioners have not established that any of these losses were due to unforeseen or fortuitous circumstances beyond their control. Furthermore, they offered no evidence at trial, other than their self-serving testimony, to support their assertions that they expected their pattern of losses to change.

This factor favors respondent.

## 7. Amount of Occasional Profits From the Activity

We consider the amount of occasional profits, if any, from the subject activity. Sec. 1.183-2(b)(7), Income Tax Regs. An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit. However, substantial profit, though only occasional, would generally be indicative that an activity is engaged in for profit, where the investment or losses are comparatively small. Id.

Petitioners barely recouped approximately 1 percent of their expenses in the form of race winnings. Petitioners provided no evidence that they ever made a profit from putting a horse out to

stud or that they had developed an organized plan to reap a profit from breeding or racing horses in the future.

This factor favors respondent.

8.  Petitioners' Financial Status

We consider petitioners' financial status.  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than the activity, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit.  This is especially true where there are personal or recreational elements involved.  Id.

Petitioners received income mainly from Ms. Surridge's insurance business and from Mr. Surridge's pension.  For 1990 through 1994, petitioners' taxable income, if they had not claimed the losses on their horse activity, would have equaled $34,706, $37,136, $31,598, $68,610, and $18,047, respectively. Petitioners' ability to earn income from sources other than their horse activity enabled them to finance the activity and to use its losses to shelter their other income from Federal income tax. The claimed losses for the activity also allowed petitioners to shelter Ms. Surridge's self-employment income from Federal self-employment tax.

This factor favors respondent.

9.  Elements of Personal Pleasure

We consider the personal pleasure derived by petitioners in conducting their activity.  Sec. 1.183-2(b)(9), Income Tax Regs.

Although the mere fact that a taxpayer derives personal pleasure from a particular activity does not negate a profit intent with respect thereto, the presence of personal motives may indicate that the activity is not engaged in for profit. This is especially true where there are recreational or other personal elements involved. Id.

We believe that petitioners had personal reasons for participating in their horse activities. We believe that petitioners operated their stable out of pleasure for the activity itself. We recognize that caring for horses and maintaining a horse farm is hard work. However, the fact that running the horse farm was hard work does not negate the pleasure petitioners received from engaging in the horse activity.

This factor favors respondent.

10. Conclusion

We have reviewed the record and evaluated the nine factors above. Petitioners' lack of expertise, their history of significant losses, their lack of concern in taking actions to make their activity profitable, their ability to use the activity's losses to avoid paying income and self-employment taxes in 4 of the 5 years in issue, the unlikelihood of asset appreciation, the fact that petitioners operated the activity in a nonbusinesslike manner, and the personal pleasure enjoyed by petitioners in conducting their activity lead us to conclude that petitioners lacked the requisite profit objective in each of the

subject years.  We sustain respondent's determination on this issue.

## II. Section 6651(a)

Respondent determined that petitioners are liable for additions to tax under section 6651(a)(1).  Section 6651(a)(1) imposes an addition to tax for failure to file a return timely unless the taxpayer shows that the failure was due to reasonable cause and not willful neglect.  See Kotmair v. Commissioner, 86 T.C. 1253, 1263 (1986).  A failure to file timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and, nevertheless, was unable to file the return within the prescribed time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect is a conscious, intentional failure or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioners argue that they did not prepare timely tax returns for taxable years after 1990 because it had not been determined whether their horse activity was subject to section 183, and they did not want to prepare returns twice.  Their unwillingness to file timely a return in these circumstances does not constitute reasonable cause under section 6651.  See Rakoski v. Commissioner, T.C. Memo. 1993-68, affd. without published opinion 46 F.3d 1144 (9th Cir. 1995).  We sustain respondent's determination on this issue.

III. Section 6654

Respondent determined that petitioners underpaid their estimated income tax and are liable for additions to tax under section 6654.  Where payments of tax, either through withholding or by making estimated tax payments, do not equal the percentage of the total liability required under the statute, imposition of the addition to tax under section 6654 is automatic, absent a showing that the taxpayer has met one of the exceptions contained therein.  Recklitis v. Commissioner, 91 T.C. 874, 913 (1988); Tillman v. Commissioner, T.C. Memo. 1996-8.  Petitioners have not shown that any of the exceptions apply.  We sustain respondent's determination on this issue.

We have considered all of petitioners' arguments in this case, and, to the extent not discussed above, find them to be irrelevant or without merit.  To reflect the foregoing,

Decisions will be entered

under Rule 155.